SHAW, Justice.
Steven Knoedler and Katherine Knoe-dler, the plaintiffs below, appeal from a summary judgment entered in favor of defendants Leslie Blinco and Kathleen Blinco and a summary judgment in favor of defendant Avalon Homeowners POA, Inc. (“the homeowners association”), on the Knoedlers’ claims alleging nuisance, negligence, and wanton misconduct, and seeking injunctive relief related to the Blineos’ alleged violation of restrictive covenants imposed in the Avalon subdivision developed by Avalon Development, L.L.C. The Knoedlers also appeal from a summary judgment entered in favor of defendant Ranee Reehl (both individually and *1048 doing business as Reehl Properties, Inc.) on the Knoedlers’ fraud claim.

Facts and Procedural History

The Knoedlers and the Blincos own adjacent lots in Avalon, a residential subdivision in Daphne. In June 2005, the Blincos met with Reehl, a real-estate developer and one of the developers of the Avalon subdivision, regarding their desire to construct a residence on the property located in Avalon. During that initial meeting, Reehl discussed the existence of a restrictive covenant regarding the storage of a recreational vehicle (“RV”) on property in Avalon. The applicable covenant provides as follows:
“4.11 No house trailer or mobile home shall be permitted on any Lot at any time. No more than one camper, motor van or similar recreational vehicle, nor more than one boat and boat trailer may be stored on the Lot at any time, nor shall any such camper, motor van or other recreational vehicle or boat and boat trailer be permitted to be parked or stored on the front or side lawn of the Lot but shall be stored to the rear of the Lot as inconspicuously from the street as practicable. In addition, notwithstanding anything to the contrary herein, any camper, motor van or similar recreational vehicle or boat and boat trailer to be stored on any Lot must be approved by the [architectural review] committee. Automobiles may not be parked on the front or side lawn of any Lot.”
Based upon Reehl’s assurances that the covenant permitted a single RV to be stored on the property, the Blincos entered into a purchase agreement for the property. Thereafter, the Blincos’ house plans, which included dedicated water and electrical hook-ups for their RV, were approved by the developers, and the house was constructed in accordance with the approved plans. The Blincos closed on their house on September 19, 2006, and moved in on September 20, 2006.
On September 25, 2006, the Knoedlers participated in a walk-through in conjunction with their purchase of a house that abuts the Blinco property. On that occasion, the Knoedlers observed an RV parked in the Blincos’ driveway. According to the Knoedlers, when they questioned their real-estate agent, John Fowler,[1] and the builder, James Ray, both of whom were present, about the RV, Fowler indicated that he was unfamiliar with the RV but would attempt to obtain additional information. However, the Knoedlers assert that Ray informed them that the Blin-cos had just returned from a long trip and that the RV was parked there only temporarily and that it would be gone within 10 days. The Knoedlers subsequently closed on the property; they admit that, at least one to two weeks before closing, they were provided with and read a copy of the restrictive covenants applicable to the property.
When the Knoedlers’ subsequently occupied their new residence, the RV was still present on the Blinco property. The Knoedlers made repeated complaints to the homeowners association, Reehl, and Fowler regarding the RV; a dispute ensued, and the Knoedlers repeatedly made requests of both the Blincos and the homeowners association that the RV be removed. In response to those complaints, and at the request of the developers, the Blincos ultimately constructed a privacy fence to conceal the RV. According to Reehl, one of the developers of Avalon, the fence, which obscured the RV from the street and the front of the prop *1049 erty, brought the Blincos into compliance with § 4.11 of the restrictive covenants. The board of directors of the homeowners association[2] later confirmed that the Blin-cos had received both oral and written approval from Reehl to store the RV on the lot and that the presence of the RV was, therefore, not a violation of § 4.11. Those findings were conveyed to homeowners in Avalon by means of a letter dated November 7, 2007. Despite the board’s conclusion, and because of the continued complaints regarding the visibility of the Blincos’ RV, the board nonetheless recommended that the Blincos either extend their driveway behind their residence or move the RV to an RV-storage facility. In compliance with the Board’s request, the Blincos subsequently extended their driveway to the rear of their property in order that the RV might be stored as near to the rear of the property as possible.
In May 2008, the Knoedlers filed the underlying action against the Blincos and the homeowners association, seeking damages and injunctive relief and alleging both that the Blincos’ RV constituted a private nuisance and that it violated § 4.11 of the restrictive covenants of the Avalon subdivision. The Knoedlers also asserted a fraud claim against “Reehl, through his agents, servants, or employees, individually and doing business as Reehl Properties, Inc.,” on grounds that Reehl either knowingly, recklessly, or mistakenly represented to the Knoedlers that the Blincos’ RV was only temporarily present on the Blincos’ property, which misrepresentation the Knoedlers purportedly relied on in purchasing their residence.
On June 30, 2008, the Blincos filed both an answer to the Knoedlers’ complaint and a counterclaim seeking damages based on allegations of invasion of privacy, intentional infliction of emotional distress, and the tort of outrage. All the defendants filed separate motions seeking a summary judgment on the various claims asserted against them in the Knoedlers’ complaint. On February 17, 2009, the trial court granted the defendants’ motions for a summary judgment by means of three separate orders. None of those orders included specific findings of fact.[3] On March 17, 2009, the Knoedlers filed a motion to alter, vacate, or amend the trial court’s summary-judgment orders on grounds that there remained genuine issues of material fact. The trial court denied that motion on April 28, 2009. The Knoedlers appeal.

Discussion

Although no party to the present appeal questions the subject-matter jurisdiction of this Court, as we have previously stated, “we ‘are not confined to the arguments of the parties in our subject-matter-jurisdiction analysis because subject-matter jurisdiction cannot be waived by the failure to argue it as an issue.’” Bon Harbor, LLC v. United Bank, 20 So.3d 1263, 1265 (Ala.2009) (quoting Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009)). “The general rule is that a trial court’s *1050 order is not final [for purposes of appeal] unless it disposes of all claims as to all parties.” Dickerson v. Alabama State Univ., 852 So.2d 704, 705 (Ala.2002) (emphasis added).
“The one exception is that where the court has completely disposed of one of a number of claims, or one of multiple parties, and has made an express determination that there is no just reason for delay, the court may direct the entry of judgment on that claim or as to that party.”
Committee Comments on 1973 Adoption of Rule 54(b), Ala. R. Civ. P. (emphasis added).
Despite representations in the notice of appeal and the case-action summary that the underlying matter has been disposed of in its entirety, we hold that we do not have subject-matter jurisdiction over the Knoedlers’ appeal. As previously mentioned, on June 30, 2008, the Blincos filed a counterclaim asserting claims alleging invasion of privacy, intentional infliction of emotional distress, and the tort of outrage against the Knoedlers. However, the trial court’s February 17, 2009, order granting the Blincos’ summary-judgment motion, which referenced only the claims asserted in the Knoedlers’ complaint, neither mentioned nor awarded damages as to that pending counterclaim, nor did it certify as final the partial summary judgment entered in favor of the Blincos as to the Knoedlers’ claims. In fact, despite a review of the record, this Court is unable to find any further reference to the Blinco counterclaim subsequent to the Knoedlers’ answer. The trial court’s summary-judgment orders left pending the Blincos’ counterclaim, and there is no Rule 54(b), Ala. R. Civ. P., certification that the judgments are final. Consequently, the summary-judgment orders are nonfinal judgments, which will not support an appeal. See Bon Harbor, LLC v. United Bank, supra (dismissing appeal on grounds that trial court’s summary-judgment order, which left pending defendants’ counterclaims, was, at best, an order entering a partial summary judgment and not a “final, ap-pealable judgment”); Hill v. Huntsville West Ltd. Partnership, 847 So.2d 375, 376 (Ala.Civ.App.2002) (holding that because trial court’s order did not dispose of [the defendant’s] counterclaim, that “order was not a final judgment that would support an appeal”).
APPEAL DISMISSED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.

. Fowler is employed by Reehl's agency, Reehl Properties, Inc., Coldwell Banker.

. The record reflects that the members of the board of directors of the homeowners association were first elected and governance of the Avalon subdivision turned over to the homeowners association by Avalon Development, LLC, in September 2007, and that the board held its first official meeting on October 3, 2007. During that meeting, the RV dispute was first brought to the board’s attention and, in an effort to discern all the facts, the board subsequently scheduled meetings with both the Blincos and the Knoedlers in October 2007. Before surrendering the matter to the board, Reehl indicated that, as a result of the Blincos' efforts to conceal the RV, the developers felt the matter had been resolved.

. The record on appeal does not include a transcript of any summary-judgment proceedings conducted by the trial court.